Good morning. May it please the Court. In the Court below, Mr. Ambrosetti submitted compelling expert evidence from a renowned musicologist that his work, Emanuel, was copied in a work composed 13 years later. The District Court held that the extrinsic test for copyright works. Mr. Ambrosetti also submitted clear and compelling evidence of the defendant's access to his work. Counsel, perhaps I missed this, but I thought that the 23 similarities that Dr. Ferraro referred to that were selected and arranged, he didn't say anything about it being in a novel form. As a matter of fact, it looks rather random to me, which is insufficient for Skidmore. How would you respond to that? Your Honor, Dr. Ferraro, a well-known expert in this circuit, said that there was an immense amount of original expression in Emanuel that consisted of these 23 similarities. So he found that the selection and arrangement of these musical choices by Mr. Ambrosetti constituted an immense amount of expression. With respect, he also pointed out that liturgical music is very similar. There's just lots and lots and lots of things that you hear over and over and over again, and Emanuel's filled with that, filled with it. I'm struggling with where there are striking similarities. As you know, it's a very high bar to meet, and I thought that Dr. Ferraro's statement was almost damning to you rather than helpful. What am I missing? Your Honor, I might go back to Dr. Ferraro's deposition testimony, where he mentioned that he's been doing music copyright work for more than a quarter century. He said, in this case, he had never seen more original expression copied in his entire career as an expert. And in order to suggest that Emanuel had, was, consisted of things that are found in prior art, you have to break down Emanuel into bits and pieces, and that's a mistake. But you also have to show where Christ, in the opposing part, where they got it from. That's what's missing. If you just take a random sample, okay. But you've got to show where they got it, and I'm not seeing that. Where did they get it from? What can you show? Where's the causation? What's unique in this case, Your Honor, this is not like Gray, where we're talking about a six-note ostinato. As Dr. Ferraro mentioned, this was a melody, and a melody that consists not just of pitch sequences, but rhythmic durations and musical development. There are three musical phrases in this 26-note melody, over 12 bars of music. What a very common phrase. I had a case called blurred lines years ago. That's very similar kinds of things. You could say Mary had a little lamb, same thing. And in this case, you've got repeated, the things he referred to, you can find that in all kinds of liturgical music. All kinds of it, in the same way, in the same fashion. So it seems to me what your client has to show is that the author of Christ got it from the Emanuel piece. And I'm not seeing that. Of course, there's the rare case where you have direct evidence of copying. You don't have that here for sure, right? For sure. So instead, we look to two tests, substantial similarity and striking similarity. If there is only substantial similarity, as the district court found, then the author of the original work has to also show an opportunity for access. And where do you find that here? The opportunity for access?  The first clear, compelling proof was that Mr. Ambrosetti supplied the composer of Christ, the later work, her husband, music publisher and musical collaborator, supplied him with a copy of Emanuel in 1985 at a music convention and then also sent him copies of Emanuel in 1986. This was acknowledged by Mr. Allstadt in two letters, saying that he was... But this was something that was allegedly discovered after this was done, wasn't new evidence, didn't ever come in. So how does that help you? We believe that the exclusion was improper, Your Honor, because it was a claim dispositive exclusion. But it wasn't. You had another way to get there and you didn't do it. You weren't successful. Here's why we think it was claim dispositive. The district court found that substantial similarity was shown in the selection and arrangement of the music over this 26-note melody over 12 bars of music. And that was original expression not found in any prior art. So all Mr. Ambrosetti had to show at that point, Your Honor, to prevail on the summary judgment was an opportunity for access, not actual access, of course, but an opportunity or a reasonable possibility of access. But that wasn't shown at the time of the motion, right? That came up later. It was shown at the time of the motion. In fact, the first party to reference these letters in which Mr. Allstadt, the husband, musical collaborator, and publisher of Bernadette Farrell, they were first mentioned in the opening summary judgment papers. Now, it's true that Mr. Ambrosetti found these two compelling letters in Mr. Allstadt's own hand. He found them 29 days after the discovery cutoff date and they were produced. But they were produced before the summary judgment motion was filed, before the cutoff for dispositive motions. And so the defendants had an opportunity to comment on those letters, not in just their reply brief, but in their opening brief. Well, let me ask you, didn't they contend that they were harmed, though, by the lateness because they had defended the case based on the dissemination theory and not the conduit theory? And this was a new theory being introduced right before summary judgment? That's what the defendants contended, Your Honor. But the problem was, and I'll come back to the claim dispositive nature of the exclusion sanction, the wrong standard was applied in the court below. This court has clearly said that where there's a claim dispositive motion, the court must examine willfulness, bad faith, fault, and must consider the availability of alternative sanctions. Well, how is this dispositive if after the court excluded the letters, he still had the fallback position that he brought his case on in the first place involving the dissemination theory? So this court has said, for example, in R&R Sales and in the Loomis case, that it doesn't have to be an explicit, your claim is dismissed to be claim dispositive. It has to have the practical effect of resulting in dismissal. And here, the practical effect, because substantial similarity was shown, this compelling evidence of a chain of communication or conduit evidence resulted in summary judgment being granted because the district court ultimately held that Mr. Ambrosetti had presented no evidence of access. Well, let me ask you this, though. Wasn't there evidence presented that they were at some sort of gathering years ago where he had played his music, had been played, and she was there? Yes, Your Honor. That's our second fallback position, that even apart from the excluded evidence, the district court should have denied the summary judgment motion because there was competent, non-speculative evidence that Bernadette Farrell herself had an opportunity to hear a manual. And this was at a trade convention, a National Pastoral Musicians Conference in Buffalo, New York, in 1988. Well, let me ask you this. She testified, though, that she didn't go listen to it. Exactly. Exactly. Of course she would testify that. But a jury would not be required to believe her testimony in that respect. So you're saying there was a question of fact raised by the evidence that was presented that she was at the same location where this music was played back in 1988. Exactly. And I want to emphasize, Your Honor, that it wasn't just played at this musical convention. It was featured and showcased. There are these special showcases where people attend and a musical work is featured through the distribution of the score and the exhibition of the work played. So that's special. When you say distribution of the score, you're talking about the written sheet music? The written sheet music is distributed and it's also performed. And she was there in 1988 when that happened? She was there in Buffalo of 1988. That's undisputed. But I think what you're really doing is proving the point that there is an alternative way, which is the widespread dissemination, which does away with the concept that somehow this was claimed as positive, doesn't it? I think not, Your Honor. I respectfully disagree. And let me explain why, if I can. There's no question that if those letters had been allowed in and Mr. Ambrosetti's three paragraphs in his declaration, 11 through 13, were allowed, that that definitively showed opportunity for access. So coupled that with substantial similarity, which was overwhelmingly proved, keep in mind this. The plaintiff was the only person that submitted expert evidence and opinion on the substantial similarity and striking similarity of the works. For strategic reasons, the defendants decided not to submit their experts' reports as part of the summary judgment papers. Ms. Finnell only submitted a very short declaration that didn't opine on the substantial similarity. With respect, counsel, I don't think you're answering my question. What I'm saying is that the idea that this was claimed as positive, I think is definitively defeated. You're making a good point that there were, you're saying there was widespread dissemination and there's lots of proof for it. But that's an alternative theory. So you weren't damned by the court's decision. It wasn't claimed as positive. So what we're really dealing with now is what did you do with the widespread dissemination issue? And that's what you're talking about with us now. And you're saying that the district court was wrong to decide this on a summary judgment basis. Isn't that right? And we're, thank you, Your Honor. We're really not arguing widespread dissemination on that Buffalo, New York thing. We're arguing direct opportunity for access. Just overall, though, you're saying that's what it is. That's another means of proving this opportunity. And again, it doesn't have to be actual, only a reasonable possibility. But I'd go back. If you've proven substantial similarity and you've got definitive proof of a channel of communication, and this Court said in Kamar, evidence that a third party with whom both the plaintiff and the defendant were dealing had possession of the plaintiff's work is sufficient to establish access by the defendant. But again, there was no publication. A lot of it was in England. It didn't say who got it or any of that stuff. It was there. She was at a convention. She said she didn't go to that. Didn't hear what it was. It was a big convention. Is that enough? There was huge publication all over the world, in the United States and in England, where she lived. That's one issue. But also, Your Honor, the performance at these showcase events, not only that she attended in Buffalo, New York, but Mr. Allstadt, her husband and music publisher, attended in Cincinnati, Ohio in 1985. Emanuel was specifically performed in a showcase event there. And is that enough? It would be, on summary judgment. Why? You've been to a bar convention. All kinds of people all over the place. People performing this. They're selling that. They're doing AI. Does that mean that if it's being done that you heard it? If you look at the case called Peel and Company v. Rug Market, the court of appeals in that case reversed the summary judgment based on the defendant and its principal attending a trade show where their original work was exhibited. What year was that case? That was in 2001, Your Honor. 238 F. 3rd, 391. If you want to save any of your time, you don't have much, but if you want to save it, you can. I would like to save a little bit of time for rebuttal. Thank you so much. Thank you. All right. Mr. Did you say this? Craigie? Miracle. May it please the court, Bert Craigus for defendant Appellees Bernadette Farrell and Oregon Catholic Press. The court obviously has some questions about this matter. One thing I would like to discuss is the issue of selection and arrangement. There is no selection and arrangement when the elements of the works are arranged differently as they were in this case. And case law notably Skidmore versus Led Zeppelin and the earlier case Litchfield versus Spielberg make clear that just making a list of the common elements between two works does not constitute a selection and arrangement. Particularly with regard to this matter, the percentages of shared elements do not constitute a selection or an arrangement do not constitute an arrangement because they do not reflect how those elements are specifically arranged. Likewise, aspects of music such as key, meter, phrase length, number of measures really do not reflect an arrangement. You all decided not to put on your own expert to counter Dr. Ferrara. Why was that? Oh, well there were a couple reasons. One I would note you know the appellant makes a lot that the expert report of Judith Finnell was not submitted. I would note if Ambrosetti genuinely felt that that was helpful to his case he was free to submit her entire report or portions thereof. The reason we did not submit the report, it was a lengthy report it was prepared in accordance with the federal rules for the purpose of advising the opposing parties with regard to the theories. It simply contained a lot of material that was extraneous to the motion. In other words, disputed facts. We wanted to focus on the undisputed facts. What we did... So you were afraid that putting in the record would create an issue of disputed fact? No, no. It would not create an issue of disputed facts. If true, that cuts against the fact that summary judgment was based on undisputed facts. No, no. Summary judgment is absolutely based on undisputed facts. Getting back to Judge Smith's question, I don't understand quite why you didn't submit the declaration. You said it contained extraneous material. We submitted two declarations of Judith Finnell. What we did not submit was her entire expert disclosure report. The reason we did not submit the report was that we wanted to focus on the undisputed facts. In other words, we needed to limit the motion to undisputed facts. In fact, most of the facts that we relied on were the facts that we obtained from Dr. Farrar during his deposition. Those facts, they were most explicitly set forth in the reply to the summary judgment motion. The crux of the motion was based on Dr. Farrar's testimony. Let me ask you this question. Sure. The judge found that there was a showing of substantial similarity. Right? The district court judge, yes. What was lacking from the plaintiff's point of view was the finding that there was access. Why wasn't a question of fact created by the fact that your client was at the 1988 Buffalo, New York convention where this very composition of Immanuel was highlighted and there were sheet music passed out? Why doesn't that at least create a question of fact as to her direct access to the piece itself? Okay. You have to look at the facts that are actually in the record. She did attend the 1988 NPN conference in Buffalo. She was there as part of a business trip. In other words, she was there to participate in the Oregon Catholic Press Choir with regard to a showcase that was put on by the Thomas Moore group out of London. The conference itself consists of meetings, speakers, workshops, and it... You're not disputing that it showcased Immanuel, though. Okay. The showcase event, these showcase events were put on by the different music publishers. Each showcase event lasted one hour. At the regional conventions, which the Buffalo convention was a regional convention, the four major liturgical, Catholic liturgical publishers were able to present their own showcase. In other words, when they had their showcases, it was the only showcase going on. So what you're telling me is that it only creates a question of fact if your client admits she was there, sitting there, listening to it, and got the sheet music? Okay. The standard with regard to access is the party asserting that there was access has to produce or submit evidence showing that there was a reasonable possibility that the work would have been viewed by the other party. So you're saying it's possible, but not reasonably possible. Right. There is a bare possibility. Why don't you say it's reasonably possible? I'm sorry to interrupt your question. Why do I say reasonably? She was at the convention, was played at the convention. We don't know what happened at the convention, but it's reasonably possible, isn't it? Well, I would say no, because there were 1,000 attendees at the convention. There were multiple works. Keep in mind, I mean, there are multiple with regard to the lesser publishers. I get that, but I mean, that's just because there's a lot going on doesn't necessarily exclude possibilities or reasonable possibilities. The possibility isn't excluded, but I would maintain that it's a bare possibility, not a reasonable possibility. How do we distinguish? Pardon me? Go ahead. Any question for a fact finder? If you look at cases, particularly Loomis versus Cornish, that was decided as a matter of law. I think here, when you look at it as a matter of law, is this evidence sufficient to submit to a jury? That's what you really have to do to succeed here, is to show that even though there are conflicting versions, that as a matter of law, you win. Otherwise, don't you have to have a jury look at it or a trial court look at it and determine, based upon her access, all these things about the convention and so on, was enough to turn this over? I don't think so. I mean, one thing you need to consider is who has the burden of proof with regard to access and what was submitted with respect to the 1980 conference. Well, let me ask you this. What did they need to submit that they didn't submit to create the reasonable possibility? Well, one thing they did not submit was the number of attendees at the showcase. There's a difference between having 100 people attend versus having 10 people attend. That's totally absent from the record. So that would be one fact. Again, that's not something that a jury would look at. The jury may say, it's just not reasonable. On the other hand, the jury may say, yeah, she's married to somebody who is a publisher, in charge of the other press, lots of interest there. We don't believe this person. I mean, of course that's fine, but the point I'm trying to make is there was very little evidence submitted with regard to what happened at this conference. The defendants, in this case, did not have the burden of proof. There is no evidence that anyone even attended the showcase. But when there's a motion for summary judgment, you basically credit the non-moving party, right? The non-moving party still has the burden. Right, but you have to draw the inferences in favor of the non-moving party at summary judgment. I think their argument is, look, there's an inference that this was available at this convention, and you ought to draw that inference in our favor. I agree with you on the burden of proof, but that goes to trial, not summary judgment. What's your best argument that as a matter of law, despite the  that your client had to Emmanuel, that she wins? Well, I would look at a case such as Art Attacks, in which there were T-shirts on display at a county fair. There was testimony there that a representative of the defendant in that case attended the L.A. county fair. The evidence that was submitted in that matter was unclear whether the person actually attended the fair when the T-shirts were on display. But here you don't have that. She did attend. The music was there. Published. She may or may not have heard it. But that's a finder of fact determination, right? And the music was showcased. Okay, the music I would disagree if the music was showcased. These events were called showcase events. They're basically just an opportunity for a publisher. They were given one hour to perform what they considered generally what they considered to be their new music. And this was primarily for the benefit of the attendees at the conference who were either church musicians or musical directors at these churches. This wasn't a convention for publishers. This was a convention for publishers to have an opportunity. The role that the publishers had in the conference was an opportunity to show their work to church musicians and music directors. Bernadette Farrell was neither a music director nor a church musician. She was a composer.  nothing else. There's no motivation shown for her to attend the various showcase events. I would draw on the Loomis versus Cornish case that supports that proposition. Loomis involved intermediaries, right? Not an allegation of direct... No. At the tail end of the Loomis opinion, it discusses how two of the songwriters who composed the accused work had participated in recording another work at a studio in Santa Barbara. They were there for ten days during which the local radio station gave widespread airplay to the allegedly infringed work. The studio had been given promotional copies of the allegedly infringed work. The group that had performed the allegedly infringed work had been given a lot of write-ups in music magazines. That was their distribution claim, right? They didn't say, look, at that radio station, this thing was performed and they could have heard it. It said the ant was in the area and there was a widespread distribution. I took the... The rest of it is just intermediary. Well, correct. The rest of the Loomis opinion is intermediary, but the point that I'm making with regard to the Loomis opinion is the court there did hold that the musicians were not in Santa Barbara, the songwriters were not in Santa Barbara for the purpose of listening to other people's music. Likewise, in the present case, Miss Farrell was not at the Buffalo Conference for the purpose of listening to other people's music. But she was there. She was there. So what's the difference between what you're arguing? It sounds like you're arguing it has to be a probability that she heard it as opposed to a possibility. Correct. The case law distinguishes between bare possibility and reasonable possibility. Was reasonable possibility equivalent to probability? It really depends on... I'm not trying to be cute here, but it really depends on your definition of probability. Why don't they just call it probability as opposed to possibility? I'm just using the terms that the Ninth Circuit has used. I think it could be expressed clearer, for instance, more likely than not. If that is what you mean by probability, that would be one standard. But that's not the standard. The standard presented by the Ninth Circuit has been bare possibility and reasonable possibility. And I haven't found any case law that really clarifies where the dividing line between... But however you define it, haven't they met that here? Excuse me? However you define those terms, hasn't that been met here? No. A widespread dissemination concept? No. I think at most there's a bare possibility. Okay. Your time is up. Let me ask whether my colleagues have additional questions. I think not. Thank you very much, Counsel. Thank you. So, Mr. Schmidt, you have some rebuttal time. Thank you, Your Honor. The two cases that the defendants rely on, reasonable possibility or opportunity for access, that's the other phrasing, are Arditax and Loomis v. Cornish. Arditax, the court said, and I quote, Arditax has failed to show that Storer visited the Los Angeles County Fair during the relevant period. Easily distinguishable. We know Bernadette Ferrer was at the Buffalo Convention where the music was showcased. And that's what distinguishes Loomis v. Cornish. Loomis v. Cornish involved, as Your Honor said, radio play and other intermediaries. This was direct access by Bernadette Ferrer. And if she denies it, still Nimmer says, even if the person who is supposed to have access denies it, it's still, you must deny summary judgment where there's evidence that there was exposure and opportunity for access. The other case I'd cite is Sound and Color, recently decided by this Court on April 29th as a helpful decision to decide this case. Thank you so much. Thank you very much, Counsel. The case just argued is submitted. We thank you both.
judges: THOMAS, SMITH, Rayes